IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANLEY LEVINE, CHARLES BRISSETTE,
SANDRA BRISSETTE, ANITA DORIO,
ANITA DORIO as Trustee of the Virginia M.
Wallace (deceased) IRA, Inheritance Trust, and
Kyle V. Wallace (deceased) Decedent's Trust,
GARY DORIO, ELIAS ZACHOS, and
GERALD WATTS, individually and on behalf of
a class of similarly situated persons,

    Plaintiffs,

  v.

THE ENTRUST GROUP, INC., ENTRUST
ADMINISTRATION, INC., ENTRUST NEW
DIRECTION IRA, INC., n/k/a NEW
DIRECTION IRA, INC., ENTRUST ARIZONA,
LLC, n/k/a VANTAGE RETIREMENT PLANS,
LLC, and EQUITY TRUST COMPANY,

    Defendants.

No. C 12-03959 WHA

**ORDER GRANTING
MOTIONS TO DISMISS**

Self-directed IRAs are authorized by federal law and are held by a trustee or custodian that permits investment in a broader set of assets than is permitted by traditional IRA custodians. In 2011, the Securities and Exchange Committee issued an "Investor Alert" warning investors that self-directed IRAs may be used to fleece investors:

> . . . While self-directed IRAs can be a safe way to invest retirement funds, investors should be mindful of potential fraudulent schemes when considering a self-directed IRA. Investors should understand that the custodians and trustees of self-directed IRAs may have limited duties to investors, and that the custodians and

> trustees for these accounts will generally *not* evaluate the quality or legitimacy of an investment and its promoters. As with every investment, investors should undertake their own evaluation of the merits of a proposal, and should check with regulators about the background and history of an investment and its promoters before making a decision.

SECURITIES AND EXCHANGE COMMISSION INVESTOR ALERT: SELF-DIRECTED IRAS AND THE RISK OF FRAUD (2011).

Note well that the Commission stated that custodians of such accounts "may have limited duties to investors" and "generally [do] *not* evaluate . . . the investment." The present civil action seeks to hold certain custodians liable for the frauds perpetrated by others, exactly what the Commission said would ordinarily not fly.

A comment on the overall design and shape of the pleading and the line-up of the parties is in order. Like Bernie Madoff, many fraud promoters have preyed on the investing public. One of them was Ephren Taylor, or so the complaint alleges. Another was Matthew Jennings, or so the complaint alleges. Were Taylor and Jennings in league with one another? No, at least not so far as the pleading reveals. Instead, each was a stand-alone ripoff artist. The same is true for the two dozen or so other Ponzi scheme operators identified in the complaint.

Other than having been defrauded, the alleged victim of Promoter Taylor has nothing in common with the alleged victim of Promoter Jennings other than the happenstance that both maintained their investment accounts at The Entrust Group, Inc., based in Oakland. Entrust was not the perpetrator of the various fraudulent schemes but allegedly failed to detect the frauds in time to save plaintiffs from their bad investment decisions. Again, Entrust was only the custodian of the self-directed IRAs. It followed the directions of the investors as to where to send the money. If an investor was duped by Promoter Taylor into sending money to Promoter Taylor, then the custodian cannot ordinarily be blamed for that investment decision, just as was said by the Commission. Nonetheless, as stated, the complaint vaguely blames the custodian for "allowing" the investor to continue to keep funds in the fraudster's venture until it was too late to salvage anything.

All of the claims for relief sound in fraud in that plaintiffs accuse defendants of aiding and abetting the fraudsters. Therefore, Rule 9(b) requires specificity. The present complaint

2

falls woefully short of specificity. Therefore, certain plaintiffs shall be allowed to re-plead their best case against certain defendants and then the Court will, on subsequent motion practice, decide whether claims for relief can be stated against Entrust. It is pointless to march through this blunderbuss, cookie-cutter pleading, evidently used as a template by the same counsel in several other recent actions, and to make rulings on important issues of law with so poor a record.* Details such as whether specific defendants dealt with a specific plaintiff over age 65 should be clarified. The who, what and how of all scheme conduct must be clarified. The basis for disregarding corporate status and/or "grouping" defendants as one must be clarified. The specifics of the Arizona and Colorado entities and what they exactly did is needed. These are only examples. All details required by law and Rule 9(b) must be supplied in the new pleading.

\*          \*          \*

Assuming for the sake of argument that claims for relief can ultimately be stated by one or more plaintiffs, a serious misjoinder question must also eventually be addressed. The mere fact that Entrust allegedly should have detected the Taylor fraud in no way means it should have detected the Jennings fraud. Those were separate frauds having nothing in common other than the same institution was the custodian. By way of illustration, if a bank were the custodian of an account of an Enron victim and also the custodian of a different account for a separate Madoff victim, would anyone suggest that both victims of the separate schemes could sue the bank in a single action for failing to detect two separate frauds? No. Possibly, the bank could be sued in two separate class actions, one devoted to each fraud, but there would be no cause for lumping all of the victims together. In re-pleading, plaintiffs' counsel must address this problem. Please consult Rules 18 through 21.

Moreover, there is a further and even more severe misjoinder problem as to all victims herein who used Equity Trust Company as their custodian. Those frauds had nothing to do with

---

* At the hearing on December 6, 2012, plaintiffs' counsel admitted that a similar action involving many of the same parties was filed earlier this year in another federal district in California and was then dismissed without service because (specifically admitted) counsel did not desire to proceed before the federal judge drawn in that case and wished to try for a different judge in this district.

3

the frauds somehow connected to the Entrust Group. That is, Promoter Taylor allegedly cheated plaintiff Levine in California, who happened to have his account at Entrust. By contrast, Promoter Kurt Barton in Texas allegedly cheated plaintiff Elias Zachos in Texas who happened to have his account at Equity Trust. What did those frauds have in common? Nothing. Other than some similar legal claims, what does the claim against the two separate custodians have in common? Nothing. This is an even more extreme case of misjoinder.

\* \* \*

It is unnecessary now to do more than flag the misjoinder issue because one of the pending motions squarely raises a meritorious ground to dismiss all claims against Equity Trust, namely the forum-selection clause.

The account agreements for the plaintiffs who transacted with Equity Trust contained a choice-of-law provision specifying Ohio state law, and a forum-selection clause mandating that disputes with Equity Trust be litigated in Ohio state court. The clauses read:

> This Agreement is subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the State of Ohio.

\* \* \*

> Any suit filed against custodian arising out of or in connection with this Agreement shall only be instituted in the county courts of Lorain County, Ohio where custodian maintains its principal office and you agree to submit to such jurisdiction both in connection with any such suit you may file and in connection with any which we may file against you.

(Bartlett Decl. Ex. A § 8.15).

When plaintiffs whose accounts were administered by Equity Trust made investments in their self-directed IRAs, they executed other forms containing a similar forum-selection provision:

> Any suit filed against Custodian arising out of or in connection with its role as custodian of the undersigned's Retirement Account shall only be instituted in the courts of Lorain County, Ohio; and the undersigned agrees to submit to such jurisdiction.

(Bartlett Decl. Ex. E at 4).

4

Relying on the forum-selection clause, Equity Trust moves to dismiss for improper venue under Rule 12(b)(3). "A motion to enforce a forum-selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3); pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Forum-selection clauses are presumptively valid and should not be set aside unless the party challenging enforcement of such a provision can show it is unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Both the Supreme Court and the Ninth Circuit have construed the "unreasonable" exception narrowly. A forum-selection clause is unreasonable if: (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) enforcement would contravene a strong public policy of the forum in which suit is brought. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *Bremen*, 407 U.S. at 12–18). The party seeking to avoid a forum-selection clause bears a "heavy burden" to establish that the clause is unenforceable. *Bremen*, 407 U.S. at 17.

Equity Trust contends that there has been no showing that it would be so gravely difficult for plaintiffs to litigate in Ohio that they would be deprived of their day in court. This order agrees. The named plaintiffs who transacted with Equity Trust are citizens of Texas. They are represented by sophisticated class counsel, and Equity Trust is located in Ohio. For these plaintiffs, there is no apparent reason why a California forum would be convenient and an Ohio forum would not.

Plaintiffs hang their hats on the third prong of *Bremen*. Although it is not clearly stated in plaintiffs' opposition, they are actually objecting to the combination of a forum-selection and an Ohio choice-of-law provision. In essence, they contend that the combined enforcement of these provisions will place them in an Ohio court, subject to Ohio law. This would impair their rights because of punitive-damages caps under Ohio law, and contravene California's alleged public policy in favor of class action relief.

1    Plaintiffs' argument, however, is missing at least one component: A California resident
2 *named* plaintiff under the aegis of California's public policy. The general rule is that "each
3 plaintiff in a class action must individually satisfy venue." *Dukes v. Wal-Mart Stores, Inc.*,
4 No. 01-2252, 2001 WL 1902806, at *9 (N.D. Cal. Dec. 3, 2001) (Jenkins, J). Likewise,
5 determining which potential venue is appropriate should be based on the plaintiffs in the class
6 action — not absent class members. Here, the named plaintiffs who transacted with Equity Trust
7 are residents of Texas. There is no apparent reason to abrogate the venue clause applicable to
8 these plaintiffs because of a policy California applies to its own residents. And, the existence
9 of other potential plaintiffs and/or class members who are both California residents and subject
10 to the forum-selection clause is, at this juncture, entirely speculative.

11    The response of plaintiffs' counsel that somehow these Texas victims can come to
12 California and launch a nationwide class action based on California law against an Ohio-based
13 custodian, and then to use the possibility of a future class certification as a way to derail the
14 forum-selection clause is completely unpersuasive. It would be extremely far-fetched to allow
15 these Texas plaintiffs to exploit California law in this fashion. There is no substantial California
16 connection. Surely, the Ohio courts and juries are as fair as California courts and juries to
17 non-residents. Worse, even in California, a valid forum-selection clause will be enforced
18 notwithstanding the plaintiffs' desire to sue on behalf of others. *William Lee, et al. v. Ephren*
19 *Taylor, et al.*, No. C12-03322 (C.D. Cal Dec. 3, 2012) (Judge Percy Anderson) (enforcing Equity
20 Trust's forum-selection clause).

21    To return to the misjoinder problem as to Entrust customers, it is too early to say whether
22 the victims of disparate frauds who coincidentally used the same custodian can join together in
23 one suit. This order expresses doubt about that, but the remaining plaintiffs will be allowed to
24 re-plead their best case before this issue will be decided.

25    Vantage's motion to dismiss for lack of personal jurisdiction will not be ruled on until
26 after limited discovery. Each side may take one deposition on the issue of personal jurisdiction
27 and may propound six narrowly directed document requests. This must be done promptly and
28 supplements based thereon may be filed by January 18, 2013. Counsel must cooperate to

6

streamline this discovery. This discovery must go forward now even though there is the possibility that a motion to dismiss will eventually be granted.

*     *     *

To the foregoing extent only, all motions to dismiss are **GRANTED**. By **JANUARY 3, 2013**, the Levine and Brissette plaintiffs may re-plead against the Entrust defendants and must do so with specificity. They must plead their best case. By **JANUARY 17, 2013**, a new motion to dismiss may be filed, to be heard on a 35-day track. All other plaintiffs and defendants are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: December 6, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE