United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANLEY LEVINE, CHARLES BRISSETTE,
and SANDRA BRISSETTE individually, and
on behalf of a class of similarly situated persons,

    Plaintiffs,

  v.

THE ENTRUST GROUP, INC.; ENTRUST
ADMINISTRATION, INC.; ENTRUST NEW
DIRECTION IRA, INC. n/k/a NEW DIRECTION
IRA, INC.; and ENTRUST ARIZONA, LLC
n/k/a VANTAGE RETIREMENT PLANS, LLC,

    Defendants.

 /

No. C 12-03959 WHA

**ORDER ON MOTION TO DISMISS**

**INTRODUCTION**

Defendants move to dismiss plaintiffs' amended complaint for lack of personal jurisdiction over one defendant, failure to comply with Rules 8 and 9(b), failure to state a plausible claim under Rule 12(b)(6), and misjoinder. The motions as to personal jurisdiction and misjoinder are **DENIED**. To the extent stated below, defendants' motions for failure to comply with Rules 8 and 9(b) and lack of plausibility are **GRANTED**.

**STATEMENT**

Plaintiffs filed this putative class action in July 2012. A motion to dismiss was granted. Some parties were dismissed, and some plaintiffs were given leave to "re-plead their best case" (Dkt. No. 85-3). In January 2013, plaintiffs filed an amended complaint against The Entrust

Group, Inc.; Entrust Administration, Inc.; Entrust New Direction IRA, Inc. n/k/a New Direction IRA, Inc.; and Entrust Arizona, LLC n/k/a Vantage Retirement Plans, LLC, all of whom are involved in holding investments for others.

This action arises out of self-directed IRAs. Self-directed IRAs are held by an administrator and allow for investment in a broader set of assets than permitted in traditional IRAs. Plaintiffs invested in self-directed IRAs administered by defendants. Plaintiffs chose to invest in businesses that turned out to be Ponzi schemes orchestrated by third parties, specifically by Ephren Taylor and Matthew Jennings. Plaintiff Stanley Levine had an account with Entrust Arizona and invested with Matthew Jennings, while plaintiffs Charles and Sandra Brissette had an account with Entrust New Direction and invested with Ephren Taylor. Neither Taylor nor Jennings are named in this action; rather the gravamen of the pleading is that defendants, as administrators, knew about the fraudulent schemes and hid them from plaintiffs.

Entrust Group and its wholly owned subsidiary, Entrust Administration, allegedly set the policies that Entrust Arizona and Entrust New Direction followed. They also allege that Entrust Group worked with Entrust Arizona and Entrust New Direction separately to provide plaintiffs services. Plaintiffs allege claims in conversion, intentional fraud, negligent misrepresentation, constructive trust, as well as California claims under the Elder Abuse Act and the Unfair Competition Act, and a federal claim under the Dodd-Frank Act (Amd. Compl. ¶¶ 122–77).

Defendants now move again to dismiss (Dkt. Nos. 93, 96, 97). Defendants contend: (1) personal jurisdiction cannot be exercised over Entrust Arizona; (2) the amended complaint violates Rules 8 and 9(b); (3) the amended complaint fails to state a plausible claim under Rule 12(b)(6); and (4) defendants are misjoined (Dkt. No. 93-2). Finally, defendants request attorney's fees and costs under 28 U.S.C. 1927 (Dkt. No. 93-22). To the extent described below, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

## ANALYSIS

### 1. PERSONAL JURISDICTION.

California law determines personal jurisdiction in this action, and its long-arm statute "is coextensive with federal due process requirements." *Mavrix Photo, Inc. v. Brand Tech., Inc.*,

1  647 F.3d 1218, 1223 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1101 (2012).  Defendant Entrust
2  Arizona and plaintiffs dispute whether Entrust Arizona is subject to personal jurisdiction in
3  California under general or specific jurisdiction (Dkt. Nos. 93-14, 98-7).  The parties do not
4  dispute that Entrust Arizona is incorporated in and has its principal place of business in Arizona
5  (Dkt. Nos. 91-5, 93-14).

### A. General Jurisdiction.

General jurisdiction is an "exacting standard" that requires a defendant to "engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Mavrix Photo*, 647 F.3d at 1223–24 (quotations and citations omitted).

Plaintiffs' allegations show that Entrust Arizona worked with California residents, but do not show that Entrust Arizona ran its business from California (Opp. 3–5).  Plaintiffs do not allege that Entrust Arizona has offices or staff in California, is registered to do business in the state, has a registered agent for service of process, or pays any state taxes.  Entrust Arizona's contacts with California fall well short of the requisite showing for general jurisdiction, and it is not subject to general jurisdiction in California.

### B. Specific Jurisdiction.

To establish specific jurisdiction for a tort action, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1228.  Additionally, (4) "the claim must be one which arises out of or relates to the defendant's forum-related activities; and [(5)] the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quotation omitted).  This order will now analyze each requirement.

*First*, plaintiffs allege that Entrust Arizona committed an intentional tort, which satisfies the first requirement (Amd. Compl. ¶¶ 128–34).

*Second*, the expressly aimed requirement is satisfied when the defendant allegedly "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

3

1  of the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).
2  Plaintiffs allege that Entrust Arizona mailed fraudulent statements to Levine's California address
3  (Opp. 11). Thus, it knew Levine was a California resident, satisfying the second requirement.
4  Entrust Arizona responds that Levine made the initial contact with Entrust Arizona (Dkt.
5  No. 93-17). The party that initiates contact is relevant only when the claim sounds in contract.
6  *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). This action sounds in tort.

*Third*, plaintiffs allege that Entrust Arizona's actions caused Levine to lose money in California. Because Entrust Arizona had Levine as a customer and mailed him statements and letters in California, according to plaintiffs' allegations, Entrust Arizona knew that any harm to Levine would likely be suffered in California. The third requirement is satisfied.

*Fourth*, plaintiffs allege that the statements Entrust Arizona mailed Levine were fraudulent and that the services it provided Levine were unlawful. These claims arise out of the alleged torts of Entrust Arizona that were directed to a California resident, satisfying this requirement.

Entrust Arizona contends that its services are at issue in the complaint and that mailing statements to Levine in California was only a by-product of its Arizona-based services, but this argument is unpersuasive (Dkt. No. 93-18). Plaintiffs allege that the statements were intended to cover-up the fraud perpetuated by Jennings. These statements would not have achieved their purpose if they remained in Arizona, and their tortious effect only occurred when Levine read the statements in California.

The burden now shifts to Entrust Arizona to show "a compelling case" that reasonableness is not met. *Dole Food*, 303 F.3d at 1114 (quotation omitted). A seven-factor analysis determines reasonableness:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

4

*Ibid.* Because Entrust Arizona purposefully injected itself into California and California has an interest in providing relief to its residents, reasonableness is met, and Entrust Arizona fails to rebut these factors.

Entrust Arizona contends that it will be subject to personal jurisdiction in every state its customers wish to have their account statements mailed (Dkt. No. 93-18–19). This order, however, expresses no opinion regarding other actions. Entrust Arizona also contends that the Arizona courts are easily available to plaintiffs, but this does not rebut the factor that plaintiffs chose this forum.

Finally, Entrust Arizona asserts that its burden to defend this action is unduly high because it must retain counsel to manage multi-state litigation when only part of the action relates to it and because the likely witnesses are in Arizona (*ibid.*). The burden to defend this action in California is not undue because Entrust Arizona would likely need to retain counsel and take part in multi-state discovery even in an Arizona action. Because Entrust Arizona fails to claim an undue burden because of the action's location, this factor does not support a compelling case against exercising specific jurisdiction over Entrust Arizona.

Accordingly, Entrust Arizona is subject to personal jurisdiction in California in this action.

### 2. RULE 9(B) SPECIFICITY AND PLAUSIBILITY.

Does the amended complaint satisfy the Rule 8 and Rule 9(b) pleading requirements for fraud, and does it state a plausible claim under Rule 12(b)(6)? Rule 9(b) requires "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). Generally, this means "the who, what, when, where, and how" of the misconduct. *Ibid.* Intent and knowledge may be alleged generally. "[C]laims of fraud or mistake . . . must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). On a Rule 12 motion, "[d]ismissal is proper only where there is no cognizable theory or an absence of sufficient facts alleged to support a cognizable legal theory."

5

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[F]acts that are merely consistent with a defendant's liability" is not sufficient to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

All of plaintiffs' claims sound in fraud and rely on the intentional fraud claim, namely that defendant account administrators knew of third-party fraud and hid it from their account owners. To plead fraud in California, plaintiffs must plead "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess*, 317 F.3d at 1105 (quotation omitted). Plaintiffs' allegations are insufficient to state a claim for intentional fraud because it lacks specificity and plausibility as pled.

Defendants' alleged misrepresentations included mailing to plaintiffs account statements that reflected significant value when in fact the money had been stolen, and defendants knew these statements were false because they knew that Taylor and Jennings had absconded with the money (Amd. Comp. ¶¶ 5, 8, 130–31). Defendants allegedly intended to defraud plaintiffs because they received administrative fees based on the value of the account (*id.* ¶¶ 5, 132). Plaintiffs relied on the account statements and would not have continued to invest in the accounts but for the misrepresentations (*id.* ¶ 133). Finally, they suffered financial losses (*id.* ¶ 134).

Defendants contend that several parts of the fraud claim are lacking: intent, knowledge, and reliance. Defendants also contend the amended complaint improperly grouped defendants.

### A. Intent.

Defendants contend that plaintiffs do not plead intent sufficiently because the reason defendants wanted plaintiffs to rely on their misrepresentations is insufficient (Dkt. No. 93-8–9). Rule 9(b) does not require intent to be alleged with specificity. Moreover, defendants' motivation is plausible. Plaintiffs' allegation as to intent is proper.

### B. Knowledge.

Defendants contend that the allegation that defendants knew about the fraud perpetuated by Taylor and Jennings is not specific enough (Dkt. No. 93-8). "Rule 9(b) does not require that the complaint . . . furnish a detailed exegesis of how the defendants came by the knowledge of

6

1  those facts which belie their statements." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554
2  (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*,
3  253 F.3d 423, 429 & n.6 (9th Cir. 2011). But a purpose of Rule 9(b) is to "deter plaintiffs
4  from the filing of complaints as a pretext for the discovery of unknown wrongs" and "to prohibit
5  plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and
6  economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125
7  (9th Cir. 2009) (quotations omitted).

Plaintiffs allege:

> Defendants knew, based upon calls from their own . . . customers complaining that they were unable to reach Taylor or Jennings or unable to liquidate their [accounts] or based upon subpoenas received from regulatory agencies such as the SEC or state securities divisions, that the [sic] Taylor and Jennings were defaulting on loans, notes and other "investments" included in plaintiffs' accounts

(Amd. Compl. ¶ 8). This purposefully vague allegation, the key to plaintiffs' claims, does not give rise to a plausible inference that each defendant knew that Taylor and Jennings had stolen the investments and that the account statements reflected false values when they were issued. For all this allegation reveals, this information came to light after the time frame of the investments or after plaintiffs knew about the fraud themselves. Plaintiffs must specify when these calls were made to defendants and the extent of knowledge at times relevant to plaintiffs. If the pleader cannot be precise, the pleader must at least approximate. The basis for the allegations must be given as well.

### C. Reliance.

Defendants contend that plaintiffs failed to allege justifiable reliance because the self-directed nature of the accounts limited defendants' duties to plaintiffs, plaintiffs' allegation that the process confused one plaintiff is insufficient, and causation is not plausible (Dkt. No. 93-9–13). This order agrees in part.

The parties dispute whether defendants owed any duty to seek out fraud or to provide fair market values of the accounts. Defendants quote an IRS form that they say governs the relationship with plaintiffs and precludes these duties, but this form does not appear to be from

7

the IRS. Nevertheless, the SEC notes that custodians "may have limited duties to investors, and that the custodians . . . will generally *not* evaluate the quality or legitimacy of an investment" or of the third-party investors such as Taylor and Jennings. SECURITIES AND EXCHANGE COMMISSION INVESTOR ALERT: SELF-DIRECTED IRAS AND THE RISK OF FRAUD (2011). Given this statement from the SEC and the self-directed nature of the accounts, it is not plausible that plaintiffs as a general matter would rely on defendants to seek out fraud or to perform fair market valuations.

Plaintiffs allege that defendants sent letters to plaintiffs that established defendants' duty to perform fair market valuations of the accounts (Amd. Compl. ¶ 74–76, 83, 104–05, 109). In light of the statement from the SEC and absent any rule or regulation from the IRS that requires defendants to perform fair market valuations, plaintiff must set forth the language, particulars, and effective date of the duty and append the letters to the complaint that purport to bind defendants.* Additionally, in order to show that defendants had a duty to perform the fair market valuations in the relevant time frame of plaintiffs' investments, plaintiffs must set forth the dates of when plaintiffs invested in the schemes and when the account statements were not properly valued. If plaintiffs intend to claim that defendants had a duty to seek out fraud or reveal fraud, they also must plead facts that show these duties existed at the critical times.

Defendants also contend that plaintiffs fail to establish that their damages were a plausible result of the alleged misrepresentations in the account statements because the allegedly misleading statements occurred after plaintiffs' money was already stolen (Dkt. No. 93-9). In their claim for fraud, plaintiffs allege that they would not have originally invested or continued to invest if they had known the truth (Amd. Compl. ¶ 133). It is plausible that plaintiffs might have been able to recoup some of their investments had it not been for the misrepresentation.

---

* For purposes of personal jurisdiction, plaintiffs provided letters that might be the correspondence in question (Dkt. No. 98-1 Exh. B). These letters are insufficient to give rise to a plausible inference that defendants had a duty because it is unclear that all defendants sent these letters and that all plaintiffs received these letters. Moreover, the letters merely state that defendants were "beginning" to be required to perform additional duties. What is important is when defendants actually had a duty as opposed to when regulators were "beginning" to establish such a duty.

8

### D. Grouping Defendants.

Defendants assert that plaintiffs' amended complaint must be dismissed because it groups defendants together for purposes of their allegations (Dkt. No. 93-7). This order agrees. In order to provide adequate notice of a fraud claim to defendants, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). Plaintiffs concede they must do so (Opp. 13).

For example, plaintiffs allege that all defendants are liable for claims by Levine and the Brissettes (Dkt. No. 93-7). But plaintiffs allege no facts suggesting that Levine worked with Entrust New Direction or that the Brissettes had a connection with Entrust Arizona. As another example, plaintiffs do not specify which plaintiffs did not receive accrued interest and which defendants did not deposit it (Amd. Compl. ¶ 43). The allegations regarding promissory notes, failure to retain documents, and the improper selling of plaintiffs' assets also need specification.

Plaintiffs respond that "there is no absolute requirement" that plaintiffs must "identify *false statements* made by each and every defendant." *Swartz*, 476 F.3d at 764. In *Swartz*, however, defendants were allegedly involved in a conspiracy. *Ibid.* In the amended complaint, plaintiffs no longer allege that defendants were involved in a conspiracy. Rule 9(b) and our court of appeals requires the roles of defendants to be specified, and plaintiffs must comply. Because all of plaintiffs' claims sound in fraud, this requirement applies to all claims.

Accordingly, plaintiffs have not sufficiently alleged the fraud claim, and defendants' motion to dismiss this claim is **GRANTED**. Because all of plaintiffs' claims rely on the fraud allegations, defendants' motion to dismiss the other claims is also **GRANTED**.

### 3. REMAINING CLAIMS.

Although all of the claims are dismissed because they rely on the fraud claim, some of the claims may be dismissed for separate reasons.

### A. Elder Abuse.

To state a claim for financial elder abuse, plaintiffs must allege that defendants took or assisted in taking "real or personal property of an elder . . . for a wrongful use or with intent to

9

defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a). Plaintiffs fail to allege facts that give rise to a reasonable inference that Entrust New Direction worked with an elder. The only plaintiffs Entrust New Direction allegedly worked with are the Brissettes, and plaintiffs do not allege that the Brissettes are elders.

### B. Dodd-Frank Act.

Plaintiffs allege that defendants' "unfair, deceptive or abusive acts or practices" violated regulations from the Consumer Financial Protection Bureau (Amd. Compl. ¶ 162). This claim fails for the separate reason that there is no plausible claim under the Act. Plaintiffs do not allege which regulations defendants allegedly violated and only cite 15 U.S.C. 78u et seq. and the Dodd-Frank Act (*id.* ¶¶ 160–65). Neither of these statutes creates a plausible claim.

Under 15 U.S.C. 78u, which deals with securities violations, class action plaintiffs are required to include a certification with their complaint. 15 U.S.C. 78u-4. This certification requires, among other things, that plaintiffs certify they did not purchase the security at counsel's direction and that they set forth the transactions at issue. *Ibid.* Plaintiffs make no allegations that suggest any of their claims for relief arise under securities laws. Moreover, even if they intend to do so, they have failed to follow the statutory requirements. Any claim under this statute is implausible.

Under the Dodd-Frank Act, the Court's research can find no private right of action. One federal district judge in our circuit has explicitly stated that the Act "did not create a private right of action." *Assad v. Hart*, No. 11-CV-2269, 2012 WL 33220, at *3 (S.D. Cal. Jan. 6, 2012) (Judge William Hayes). A "court may not infer a private right of action from a federal statute unless Congress has displayed an intent to create not just a private right of action but also a private remedy." *Potter v. Hughes*, 546 F.3d 1051, 1064 (9th Cir. 2008) (quotation omitted). Plaintiffs even state that the unlawful practices "are regulated by and subject to enforcement actions *from* the Consumer Financial Protection Bureau" (Amd. Compl. ¶ 162) (emphasis added). Plaintiffs' allegations under the Dodd-Frank Act are meritless because there is no private right of action.

### C. Negligent Misrepresentation.

Plaintiffs' claim for negligent misrepresentation is implausible. Under this claim, plaintiffs received allegedly fraudulent account statements that reflected value in their accounts when, in fact, there was no money in the accounts (Amd. Compl. ¶ 168). Plaintiffs only allege that they would not have initially invested but for the false account statements (*id.* ¶ 171). The account statements, however, were sent after plaintiffs invested with Taylor and Jennings. Thus, the misrepresentations in the statements could have no effect on plaintiffs' earlier choice to invest. Plaintiffs fail to state facts that make a plausible claim for relief under negligent misrepresentation.

### D. Conversion.

Plaintiffs' claim for conversion fails because it fails to allege the required element that defendants had control of plaintiffs' property (Dkt. No. 93-13). "Under California law, conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property." *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003). Plaintiffs allege that "Taylor and Jennings exercised dominion and control over the property of Plaintiffs," but fail to allege that defendants ever exercised dominion and control over the property and fail to allege any facts that suggest they did so (Amd. Compl. ¶ 124). Plaintiffs have failed to allege an essential element of this claim. This is dispositive.

Plaintiffs' claim for conversion also fails to specify the property in question. Defendants contend that a claim for conversion cannot exist over money (Dkt. No. 93-13). California permits a conversion claim over money when "there is a specific, identifiable sum involved." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007). Plaintiffs fail to specify the money that was converted, only alleging "their property" and "their funds" (Amd. Compl. ¶¶ 125–26).

### 4. MISJOINDER

Defendants contend that they are misjoined under Rule 20(a). Because this order holds that plaintiffs must provide more specificity, defendants' motion for misjoinder is **DENIED WITHOUT PREJUDICE**. Defendants may re-raise this issue after the next pleading.

11

**5.    ATTORNEY'S FEES AND COSTS.**

Defendants request attorney's fees and costs under 28 U.S.C. 1927 (Dkt. No. 93-20–22). Plaintiffs' claims in the amended complaint do not appear to be frivolous at this stage. This order finds that attorney's fees and costs are not warranted. Accordingly, subject to the outcome on re-pleading, the request is **DENIED**.

## CONCLUSION

To the extent explained above, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may move to file an amended complaint to cure the deficiencies set forth above by **APRIL 11, 2013**. Plaintiffs shall append to their motion a memorandum to the proposed amended complaint detailing what has been added, deleted, and changed. The memo shall explain why the foregoing deficiencies have been cured.

**IT IS SO ORDERED.**

Dated:  April 1, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE