IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANLEY LEVINE, CHARLES BRISSETTE, and
SANDRA BRISSETTE, Individually, and on behalf
of a class of similarly situated persons,

    Plaintiffs,

  v.

THE ENTRUST GROUP, INC., ENTRUST
ADMINISTRATION, INC., ENTRUST NEW
DIRECTION IRA, INC. n/k/a NEW DIRECTION
IRA, INC., and ENTRUST ARIZONA, LLC n/k/a
VANTAGE RETIREMENT PLANS, LLC,

    Defendants.

No. C 12-03959

**ORDER DENYING
MOTION FOR LEAVE
TO FILE SECOND
AMENDED COMPLAINT**

**INTRODUCTION**

In this putative class action arising out of self-directed IRAs, the immediate question is whether to grant leave to file a second amended complaint. This follows an order which dismissed the first amended complaint for failure to comply with Rules 8 and 9(b) and lack of plausibility. For the reasons explained below, the motion is **DENIED**.

**STATEMENT**

Plaintiffs invested in self-directed IRAs administered by defendants. Self-directed IRAs allow for a broader and riskier set of permissible investments than is permitted under traditional IRAs. As the investors, plaintiffs chose to invest in businesses that turned out to be Ponzi schemes. The Ponzi operators were not named in the complaint. Instead, plaintiffs contended

1  and continue to contend that defendants, as account administrators, knew about the fraudulent
2  schemes and helped hide them from plaintiffs.

3  An order dated April 1, 2013, dismissed plaintiffs' entire first amended complaint
4  because it lacked the specificity required for claims of fraud under Rules 8 and 9(b) and it
5  failed to state a plausible claim of fraud under Rule 12(b)(6) (Dkt. No. 113). The April 1 order
6  held that the pleading (1) inadequately pleaded the element of knowledge for intentional fraud;
7  (2) inadequately pleaded the element of reliance for intentional fraud; and (3) improperly
8  grouped defendants together for purposes of their fraud allegations (*id.* at 7–9). The order
9  dismissed the remaining claims because each sounded in fraud. Plaintiffs' claims of conversion,
10 elder abuse, violation of Dodd-Frank, and negligent misrepresentation were also dismissed on
11 separate grounds.

12 In order to cure these deficiencies, plaintiffs were allowed to seek leave to amend to:
13 (1) specify when defendants received customer complaints about the investments and detail
14 the extent to which defendants had knowledge of the fraudsters' activities; (2) "set forth the
15 language, particulars, and effective date of the duty [to perform fair market valuations of the
16 accounts] and append the letters to the complaint that purport to bind defendants" (*id.* at 7–8);
17 and (3) specify "the role of each defendant in the alleged fraudulent scheme," citing *Swartz v.*
18 *KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

19 Plaintiffs now move for leave to file a second amended complaint (Dkt. No. 118).
20 Defendants filed an opposition claiming (1) undue delay; (2) bad faith or dilatory motive
21 on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously
22 allowed; and (4) undue prejudice to the opposing party by virtue of allowance of the amendment
23 and futility of amendment (Dkt. No. 123 at 6). For reasons set forth below, plaintiffs' motion is
24 **DENIED**.

2

**ANALYSIS**

In opposition are interposed undue delay, bad faith, undue prejudice, and futility.

### 1. UNDUE DELAY.

Defendants argue that plaintiffs' apparent forum shopping as well as plaintiffs' "[failure] to plead a case upon which relief can be granted" are sufficient to demonstrate undue delay (Dkt. No. 123 at 7). Defendants' charge of forum shopping is based upon plaintiffs' admission at our earlier hearing that they dismissed their suit in the Central District of California in order to draw a different judge to handle the suit. Reprehensible as that may be, it is not a species of delay. Plaintiffs complied with the established timeline for filing this motion (Dkt. No. 117).

### 2. BAD FAITH.

Once again as to bad faith, defendants raise plaintiffs' alleged forum shopping and "[failure] to plead a case upon which relief can be granted" (Dkt. No. 123 at 7). Forum shopping *is* a species of bad faith. Problem is, the April 1 order *invited* plaintiffs to file the motion to amend, so doing so itself is not bad faith (Dkt. No. 113 at 12).[*]

### 3. FUTILITY OF AMENDMENT.

Defendants insist that plaintiffs' motion does not explain how the proposed second amended complaint cures the defects of the first amended complaint. This order agrees. The motion for leave to amend outlines the additions made in the second amended complaint, but nowhere does it explain how these amendments address each deficiency as laid out in the April 1 order.

Defendants also claim that the proposed second amended complaint does not allege the specific facts necessary for a claim of fraud and that the amendments are therefore futile. This order agrees. The proposed second amended complaint fails to cure any of the three

---

[*] This order notes, however, that the complaint in this action is but one of several cookie-cutter complaints filed by plaintiffs. The most recent example is a complaint filed in the Northern District of Maryland. *Sams v. Entrust Arizona, LLC*, No. C 13-03322 (N.D. Md. May 2, 2013) (Judge Ellen Hollander). The complaint in *Sams* is virtually identical to the complaint in the present action. The plaintiff and the fraudster are changed, but very little else. This order is concerned that plaintiffs are filing parallel complaints against defendants until they can find a judge who permits their allegations to survive a motion to dismiss.

3

1  deficiencies outlined in the April 1 order and therefore plaintiffs have not stated a viable claim
2  of fraud. Each deficiency will now be considered in turn.

### A. Proposed Second Amended Complaint Fails to Specify When Defendants Received Customer Complaints And Defendants' Knowledge of Fraudsters' Activities.

In the first amended complaint, plaintiffs asserted that defendants had received numerous customer complaints regarding investors' inability to liquidate their assets with Fraudsters Taylor or Jennings (Dkt. No. 91 at 3). The April 1 order called on plaintiffs to specify *when* these complaints were made and provide the basis for this allegation (Dkt. No. 113 at 7). The approximate date of the customer complaints is crucial to plaintiffs' allegations. If defendants received the complaints after it was too late for plaintiffs to salvage their investments, then defendants cannot be said to have committed intentional fraud by failing to warn plaintiffs. Plaintiffs were supposed to at least provide an approximate timeline of when defendants received the customer complaints relative to when plaintiffs lost their investments.

But plaintiffs spurned this opportunity. The proposed pleading merely restates that defendants received a number of customer complaints and that defendants therefore knew about the fraudsters' activity (Dkt. No. 118-1 at 16, 26, 27). The proposed pleading makes no attempt to provide an approximate timeline of the customer complaints sufficient to have placed defendants on notice in time to salvage plaintiffs' investment. Therefore this deficiency is not cured.

The closest the amendments come to meeting this requirement is the allegation that defendants knew Fraudster Taylor was a "disqualified person" prior to the Brissettes' investment (Dkt. No. 118-1 at 37). While the specific defendant is not identified, the proposed second amended complaint states that defendants knew in 2006 that the Brissettes' investment was in one of Fraudster Taylor's shell companies, and was therefore a "prohibited transaction" under Internal Revenue Code Section 4975(c)(1). Such a transaction would have exposed the Brissettes to a fifteen percent tax on their investments.

4

Yet even this amendment falls short of the specificity required for a claim of aiding and abetting fraud. An allegation that defendants knew Fraudster Taylor was a "disqualified person" for tax purposes is not equivalent to an allegation that they knew he was a thief.

Plaintiffs' amendments on defendants' background checks are similarly unilluminating. The proposed second amended complaint speaks in vagaries about defendants' policy of performing background checks without providing any timeline of when these background checks occurred. For example, the proposed pleading states that "[d]efendants knew that Taylor and Jennings were stealing the money invested by [p]laintiffs and Class Members . . . based on background checks they had conducted pursuant to their own internal policies" (Dkt. No. 118-1 at 16). For all this statement reveals, defendants might have performed background checks after the fraudsters had stolen plaintiffs' investments. Indeed, the proposed pleading expresses doubt as to whether defendants performed a background check on Fraudster Jennings at all. It states that "[i]f ENTRUST conducted a background check . . . ENTRUST would have confirmed that Jennings owned more than 50% of the entities in which LEVINE was investing" (Dkt. No. 118-1 at 30). The proposed pleading fails to allege when the background checks occurred, how the background checks revealed the fraud, or even that the background checks took place. Plaintiffs fall well short of the specificity required to plead that defendants had knowledge of the fraud.

> **B. Proposed Second Amended Complaint Fails to Demonstrate Defendants' Duty to Perform a Fair Market Valuation.**

The first amended complaint insisted that defendants had a duty to perform fair market valuations of plaintiffs' self-directed IRAs. The April 1 order held that given the nature of self-directed IRAs, plaintiffs could not plausibly have relied on defendants to perform fair market valuations or to seek out fraud (Dkt. No. 113 at 8). The order required plaintiffs to "set forth the language, particulars, and effective date of the duty and append the letters to the complaint that purport to bind defendants" to such a duty (*ibid.*).

5

The proposed second amended complaint points to an IRS regulation, 26 C.F.R 1.408-2(e)(5)(ii)(E), as evidence that defendants had a duty to plaintiffs to perform a fair market valuation once a year (Dkt. No. 118-1 at 7). The regulation stated:

> The applicant will determine the value of the assets held by it in trust at least once in each calendar year and no more than 18 months after the preceding valuation. The assets will be valued at their fair market value, except that the assets of an employee pension benefit plan to which section 103(b)(3)(A) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1023(b)(3)(A)) applies will be considered to have the value in the most recent annual report of the plan.

This regulation did *not* establish that there was a duty to *perform* a fair market valuation of individual IRAs because (1) it only required those applying to be *trustees* to perform a fair market valuation of all the assets held in trust, not each individual self-directed IRA and (2) defendants are *custodians*, not trustees, and are therefore not implicated by this regulation.

Plaintiffs appended five exhibits to the proposed second amended complaint purporting to establish defendants' duty to perform a fair market valuation. The exhibits fail to establish such a duty. The exhibits consist of correspondence between defendants and plaintiffs that explained *plaintiffs'* duty to have an independent third-party perform a fair market valuation of their self-directed IRAs. For example, Exhibit 2, which is a letter from Entrust Arizona to Levine, stated that "a qualified, independent third-party should perform the valuation" and then send the results to Entrust Arizona. Similarly, Exhibit 4, which is a letter from TEG to Levine, stated that in order to "avoid any concerns with self-dealing of your self-directed investment, a qualified, independent third-party should complete the valuation or appraisal." These are just two examples of many that demonstrate that plaintiffs, not defendants, had the responsibility to hire a third-party to conduct the fair market valuation.

The proposed second amended complaint plays fast and loose with the exhibits. For example, the proposed pleading (at paragraph 150) quotes Exhibit 4 as proof that defendants had a duty to perform a fair market valuation:

> The Entrust Group as record keeper for the Custodian/Trustee of your IRA . . . is required to: Provide you with the Fair Market Value of your account as of December 31 each year.

6

While convincing at first glance, the devil is in the details. Quotes such as these do not establish a duty by defendants to actually *perform* the fair market valuation. Defendants were only required to *provide* plaintiffs with the fair market value after defendants reported the information to the IRS. The proposed pleading confuses the words "perform" and "provide." Plaintiffs had a duty to find an independent third-party to perform the fair market valuation, while defendants only had to provide plaintiffs with the fair market value after reporting the figure to the IRS. Nowhere in any of the exhibits or in the proposed second amended complaint do plaintiffs demonstrate that defendants were required to perform the fair market valuation. In fact, defendants stated in the correspondence that if plaintiffs failed to have a third-party perform the fair market valuation, defendants may have been required to close the self-directed IRA (Dkt. No. 118-1 at 49).

### C. Proposed Second Amended Complaint Improperly Groups Defendants and Fails to Specify the Role of Each Defendant In the Alleged Fraudulent Scheme.

The April 1 order held that Rule 9(b) requires plaintiffs to specify the role of each defendant with regard to each claim of fraud (Dkt. No. 113 at 9). Plaintiffs fail to sufficiently cure this deficiency in the proposed pleading. The proposed second amended complaint continues to improperly group defendants together and insufficiently specifies the role of each defendant with regard to each claim.

#### *(1) Proposed Second Amended Complaint Improperly Groups Defendants*.

The proposed pleading claims that grouping defendants together is appropriate because defendants are a national joint venture with a similar purpose and because defendants refer to themselves collectively as "ENTRUST" in their internal documents, correspondence, and marketing (Dkt. No. 118-1 at 3–5). Defendants' corporate structure and the ways in which they refer to themselves do not excuse plaintiffs from their responsibility under Rule 9(b) to specify the actions each individual defendant took to further the fraud. *See Swartz*, 476 F.3d at 765. Our court of appeals has held that Rule 9(b) prevents plaintiffs from lumping defendants together for the purposes of fraud allegations. *Ibid.* Plaintiffs must "inform each defendant separately of

1  the allegations surrounding his alleged participation in the fraud." *Id.* at 764–65.  The proposed
2  second amended complaint fails to meet this pleading standard.

3  In their reply brief, plaintiffs raise *Wool v. Tandem Computers Inc.*, 818 F.2d 1433
4  (9th Cir. 1987), to show that they may group defendants together without specifying the
5  individual actions each defendant took to further the fraud.  This is known as the group pleading
6  rule.  The court in *Wool* held that when fraudulent material is conveyed in some form of "group
7  published information," the court may presume that the publishing was the collective action of
8  all the officers.  In such circumstances, plaintiffs need only plead the misrepresentations with
9  particularity.  *Wool*, 818 F.2d at 1440.

10 *Wool* is distinguishable from the present action.  The group pleading rule as established
11 by *Wool* only applies "in cases of corporate fraud where the false or misleading information is
12 conveyed in . . . group published information."  *Ibid.*  The four defendants in this suit cannot
13 be lumped together under this logic.  The proposed pleading does not point to a single
14 misrepresentation that was published by the group of defendants.  For example, the second
15 amended complaint argues that TEG and Entrust Arizona failed to accurately report to Levine
16 the fair market value of his self-directed IRA (Dkt. No. 118-1 at 36).  Even if this were a
17 fraudulent misrepresentation, Entrust New Direction cannot be said to be a part of the "group"
18 that published the fair market value of Levine's self-directed IRA.  So too with all allegations
19 of fraud in the proposed pleading.  While the four defendants in the present suit exist as part of
20 the same corporate structure, plaintiffs may not therefore conclude that all four defendants acted
21 collectively to produce each alleged misrepresentation.

### *(2)     Proposed Second Amended Complaint Fails to Specify the Role of Each Defendant.*

As in the first amended complaint, the proposed second amended complaint fails to identify the role of each defendant with regard to each plaintiff.  The proposed pleading proceeds as though plaintiffs are a class.  They are not.  In order to sufficiently plead a claim of fraud, plaintiffs must demonstrate how each defendant aided and abetted the fraud separately as to Levine and the Brissettes.  Plaintiffs may not refer to misrepresentations made by "defendants"

8

to "plaintiffs." They must be specific. The proposed second amended complaint misses the mark.

The most glaring example of this deficiency is the proposed pleading's insistence that Entrust New Direction is liable for claims made by Levine and Entrust Arizona is liable for the claims made by the Brissettes. Nowhere in the proposed second amended complaint do plaintiffs allege that Entrust New Direction had any contact with Levine or any relationship to Fraudster Jennings. Nor does the proposed second amended complaint allege that Entrust Arizona had any contact with the Brissettes or any relationship to Fraudster Taylor. The proposed pleading cannot glide over the Rule 9(b) requirements by stating that Entrust New Direction and Entrust Arizona worked under the umbrella of TEG and Entrust Admin.

The proposed second amended complaint also fails to specify what role Entrust Admin played in aiding and abetting the fraudsters. The proposed pleading states that Entrust Admin was a wholly owned subsidiary of TEG and that Entrust Admin was primarily responsible for TEG's administrative record-keeping (Dkt. No. 118-1 at 4–5). But there is not one allegation as to what Entrust Admin did to further the fraudulent activity. Even if the second amended complaint's allegations against TEG were sufficiently pleaded, plaintiffs would still be required under Rule 9(b) to specify what Entrust Admin did to further the fraud.

Finally, the second amended complaint fails to specify the role of TEG in the alleged fraudulent scheme. The proposed pleading repeatedly states that TEG knew that its self-directed IRAs were being used to defraud their customers (*id.* at 32, 37). Yet the proposed pleading does not specify when TEG knew plaintiffs were being defrauded and if there was still time for plaintiffs to salvage their investment. Similarly, the second amended complaint does not demonstrate how TEG could have known that the fraudsters were running Ponzi schemes. The proposed pleading alleges that defendants performed background checks on the fraudsters, but they do not specify when these background checks occurred, which defendant performed the background checks, or how these background checks revealed the fraudsters' activity (*id.* at 5, 14, 15, 36). Additionally, the facts that Fraudster Taylor defaulted on a number of promissory notes in 2007 and the SEC filed a complaint against Fraudster Jennings in 2008 are not sufficient

9

to demonstrate TEG's knowledge of fraud given its status as passive custodians (*id.* at 15–16). TEG had no responsibility to monitor the safety of plaintiffs' investments and plaintiffs have not sufficiently pleaded that TEG discovered the fraud.

As to what TEG actually did to aid and abet the fraud, plaintiffs' amendments offer only smoke and mirrors. The proposed pleading states that TEG (1) refused to perform a fair market valuation on the self-directed IRAs; (2) placed a misleading regulatory update on self-directed IRA statements; and (3) discovered the fraud and did not inform plaintiffs (*id.* at 17, 23, 38). This order finds these allegations to be insufficiently specific for the purposes of Rule 9(b). *First*, custodians of self-directed IRAs were not required to perform fair market valuations. *Second*, the regulatory update was not misleading simply because it stated long-standing law regarding self-directed IRAs. *Third*, the proposed pleading does not sufficiently plead that TEG knew about the fraud in time for plaintiffs to salvage their investment.

These are a few examples among many. The proposed second amended complaint routinely makes allegations against "defendants" and "ENTRUST" without specifying which defendant took which action to aid and abet the fraud against which plaintiff.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion is **DENIED**. Plaintiffs have been given three opportunities to sufficiently plead. In plaintiffs' proposed second amended complaint, they fail to cure any of the deficiencies per the April 1 order's instruction. This action is at an end in the district court. Judgment will now be entered against plaintiffs, who should be mindful of the deadlines involved in taking appeal.

**IT IS SO ORDERED.**

Dated: June 11, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE